# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHRIS AND JOSEPHINE GARCIA,

      Plaintiffs,

    -vs-                                        No. CIV 99-0382 LH/DJS

FLEETWOOD ENTERPRISES, INC., a Delaware
corporation, REESE PRODUCTS, INC., an Indiana
corporation, RICHARDSON'S RV CENTERS, INC., a
California corporation, BILL BUTTS, MARC HAUSER,
and JOHN DOES, numbered 1-5,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants Richardson's RV Centers, Inc., Bill

Butts, and Marc Hauser's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 16), filed

May 21, 1999.  The Court, having considered the Motion, the memoranda of the parties, the record,

and the applicable law, and otherwise being fully advised, finds that the Motion to Dismiss is well-

taken and will be **granted**.

Plaintiffs filed this action for strict products liability, negligence, breach of implied warranty,

negligent infliction of emotional distress, and loss of consortium in the Second Judicial District

Court for the State of New Mexico on February 25, 1999.  Defendants Richardson's RV Centers,

Inc., Bill Butts, and Marc Hauser (Defendants) removed the action to this Court on April 2, 1999,

pursuant to 28 U.S.C. § 1441.  In so doing, Defendants preserved their jurisdictional claims.  (Notice

of Removal at 3.)  Defendants now move for dismissal on grounds of lack of personal jurisdiction.

(Motion to Dismiss at 1.)

After establishing the facts put forward in this case, the Court will first examine the standard of review applicable to deciding the instant motion. It will then analyze whether the Complaint is sufficient regarding the personal jurisdiction issue; whether this Court has personal jurisdiction over Richardson's RV Centers, Inc. (Richardson) pursuant to the New Mexico long-arm statute and the due process clause; whether this Court has personal jurisdiction over Bill Butts and Marc Hauser; and whether it would be premature to grant the motion based on factual sufficiency.

A.     **Facts.**

Plaintiffs' Complaint contains the following allegations:  On or about August 11, 1997, Plaintiffs Chris and Josephine Garcia (the Garcias) visited Defendant Richardson in Temecula, California, to purchase a recreational vehicle. (Compl. ¶ 14.)  They purchased a fifth-wheel camper trailer.  (*Id.* ¶ 42.)  Plaintiffs' purpose was to use it primarily in New Mexico, (*id.* ¶ 18), and Richardson and its employees, Bill Butts and Marc Hauser, knew of this purpose, (*id.* ¶ 19).  The sales documents were signed at Richardson's site in California, (*id.* ¶ 22), the Garcias had a specially designed tailgate and trailer hitch installed in their truck by Richardson at the California site, (*id.*), and they received a demonstration of the operation of the trailer, including hitching it to a truck bed, (*id.* ¶¶ 23-24, 29-38).  In addition, the Garcias were given manuals and various accessories at the California location. (*Id.* ¶¶ 25-28.)  The Garcia's, however, were not warned of the dangers of standing under the overhang of the trailer while raising or lowering the jacks while hitching it to the bed of a truck, (*id.* ¶ 36), nor were they warned of the dangers of not blocking the tires of the trailer while hitching it, (*id.* ¶ 37).  Later that day, Richardson towed the trailer over the Arizona state line and hooked it onto the Garcias' truck, effectuating delivery. (*Id.* ¶ 43.)  Richardson is a California corporation. (*Id.* ¶ 5.)  Defendants Bill Butts and Marc Hauser are employees of Richardson and are residents and domiciliaries of California. (*Id.* ¶¶ 6-7.)

The following May, in Albuquerque, New Mexico, the Garcias engaged in preparing the trailer for use on vacation. (*Id.* ¶ 56.) In so doing, as they attempted to hook it to their truck, Josephine Garcia was struck on the head by the trailer, fracturing her neck, and leaving her a quadriplegic. (*Id.* ¶¶ 57-73, 77.)

The Complaint also states that Richardson "does business with New Mexico residents and sells vehicles that will be utilized nationwide, including in the state of New Mexico," (*id.* ¶ 5), and that the Richardson defendants "knew" that the Garcias were from New Mexico and intended to use the trailer in New Mexico, (*id.* ¶ 8). Plaintiffs allege that, therefore, the Richardson defendants sold the Garcias the trailer to use in New Mexico and reasonably anticipated being haled into court there. (*Id.* ¶ 9.) In addition, the Complaint states that the alleged tortious act occurred within New Mexico. (*Id.* ¶ 11.)

In Defendants' Motion to Dismiss and the related Response, Reply, and Affidavit of Ray Richardson filed by the parties, the following additional facts are alleged: Richardson maintains an interactive web site on the Internet at "www.richrv.com." (Resp. at 1.) This web site shows pictures of recreational vehicles and prices for some of them. (*Id.* at 1-2.) In addition, it provides three methods of communicating with Richardson: the company's toll-free number displayed in the banner on each page; contact forms to request general information, information on specific RV models, or service and parts information to be mailed, which are submitted to Richardson via the internet; and a hyperlink to e-mail the sales department. (*Id.* at 2.)

Plaintiff alleges Richardson made it a sales practice and selling point for out-of-state customers to drive its products to Arizona before transfer of ownership to avoid the imposition of California sales tax, and Richardson offered this service to the Garcias when they began expressing interest in a purchase, sealing the sale. (*Id.* at 5.)

Defendants allege the following additional facts: Richardson has three locations, all in California. (Br. Supp. Mot. Dismiss at 2.) None of the Richardson Defendants are alleged to own real property or personal property in New Mexico, maintain a business office, or advertise or otherwise avail themselves of the benefits of the forum. (*Id.*) There is no allegation that Plaintiffs ever communicated with Richardson using the web site, either before or after the sale. (Reply at 2.) Plaintiffs allegedly indicated they sought out Richardson while they were visiting relatives in California and did not come to Richardson as a result of any advertising, on the web or otherwise. (Reply at 6.) Richardson's stated purpose for the web site is to advertise to California customers and Richardson does not direct any of its advertising to New Mexico. (*Id.*; Richardson Aff. ¶¶ 5-6.) Richardson has no mailing list of internet users in New Mexico or any other state. (Richardson Aff. ¶ 6.) In the last three years, New Mexico residents have purchased five out of 3,067 units (0.16%), none of which purchases occurred via the internet. (*Id.* ¶ 7.) In the same period, out of 11,000 toll-free calls to Richardson, nine were received from New Mexico (0.12%). (*Id.* ¶ 8.) Furthermore, Defendants maintain that delivery of the trailer in Arizona was done for the benefit of Plaintiffs as it would have been easier for Richardson had it not had to arrange for towing services by an independent contractor. (*Id.* ¶ 9; Reply at 6.)

**B.     Standard of Review.**

A motion to dismiss on grounds of lack of jurisdiction over the person is permitted by Federal Rule of Civil Procedure 12(b)(2). To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th

Cir. 1996). Once jurisdiction is challenged by a defendant, it is the plaintiff's burden to prove that jurisdiction is appropriate. *McKnutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182 (1936).

"The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction, and 'may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist.'" *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (quoting *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965)). However, although plaintiff bears the burden of establishing personal jurisdiction over the defendant, when a motion to dismiss is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing. *Id.* (citing *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984)). In the absence of a full evidentiary hearing, a district court determination of personal jurisdiction involves an application of the law to the well-pleaded facts as set forth in the complaint, affidavits, and "other written materials," favoring the plaintiff where a conflict exists, as well as a determination as to the legal sufficiency of plaintiff's jurisdictional allegations in light of the facts presented. *Id.*

In this matter, as the relevant facts are not contested, the Court uses its discretion to determine whether Plaintiffs have made a *prima facie* showing based on legally sufficient facts presented in the Complaint and other written materials. For the reasons explicated below, Plaintiffs have failed to meet their burden.

**C.     Legal Sufficiency of Complaint Pertaining to Personal Jurisdiction Under Federal Rule of Civil Procedure 8(a).**

Federal Rule of Civil Procedure 8(a) provides in relevant part: "A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." The Complaint in this matter is legally insufficient, as it does not make a *prima facie* showing that personal jurisdiction exists. The facts as stated in the Complaint

are that Richardson "does business with New Mexico residents and sells vehicles that will be utilized nationwide, including in the state of New Mexico," (Compl. ¶ 5), that the Richardson Defendants "knew" that the Garcias were from New Mexico and intended to use the trailer in New Mexico, (*id.* ¶ 8), and that therefore the Richardson Defendants sold the Garcias the trailer to use in New Mexico and reasonably anticipated being haled into court there, (*id.* ¶ 9). The Complaint further states that the alleged tortious act occurred within New Mexico. (*Id.* ¶ 11.)

These are the sole allegations pertaining to jurisdiction contained in the Complaint. As such, these facts do not support a jurisdictional claim, as discussed below, and thus the Court finds that the Complaint is insufficient to support personal jurisdiction over Defendants Richardson, Butts, and Hauser.

**D.      Appropriateness of Personal Jurisdiction over Richardson's RV Centers, Inc. Under New Mexico Law.**

Under New Mexico law, the act of an out-of-state, non-resident defendant must meet a three-prong test to be reached by the state's long-arm statute, N.M. Stat. Ann. § 38-1-16 (Michie 1998 repl. pamph.). *Salas v. Homestake Enters., Inc.*, 106 N.M. 344, 345 (1987). First, the defendant must commit one of the enumerated acts, N.M. Stat. Ann. § 38-1-16(A); second, a plaintiff's cause of action must arise from the act, *id.* § 38-1-16(C); and third, the defendant must have minimum contacts with the forum state such that personal jurisdiction does not offend traditional notions of fair play and substantial justice to satisfy constitutional due process requirements. *Salas*, 106 N.M. at 345.

**1.      *Enumerated Acts.***

Section 38-1-16(A) of the long-arm statute provides in relevant part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection, thereby submits

himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

    (1) The transaction of any business within this state;

    . . .

    (3) The commission of a tortious act within this state;

    . . . .

Plaintiffs do not assert that Richardson did business in New Mexico by engaging in the transaction with the Garcias. They do assert that Richardson "committed a tortious act within the State of New Mexico." (Compl. ¶ 11.) This assertion is well-founded. For the purposes of personal jurisdiction, New Mexico law interprets "tortious act within this state" to include negligent acts occurring outside New Mexico which cause injury within New Mexico. *Roberts v. Piper Aircraft Corp.*, 100 N.M. 363, 366 (Ct. App. 1983) (tort was committed in New Mexico when allegedly negligent aircraft repairs and fuel sales occurred in other states, but airplane crash in which liability accrued occurred in New Mexico).

Defendant Richardson's reliance on *Swindle v. General Motors Acceptance Corp.* is misplaced. 101 N.M. 126 (Ct. App. 1984) (place of the wrong, or the place in which the last event necessary to render the actor liable occurred, was Ohio, because the injury occurred in Ohio and was merely discovered in New Mexico). Although the alleged acts of Defendant Richardson occurred in California or Arizona, the actual injury to Plaintiffs occurred in New Mexico. There can be no liability to an actor until the injury actually occurs. "It is well-established . . . that in law the place of a wrong is where the last event takes place which is necessary to render the actor liable. . . . [T]he alleged negligence . . . cannot be separated from the resulting injury . . . ." *Roberts*, 100 N.M. at 366 (quoting *Gray v. American Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (1961)). Thus, Plaintiffs have satisfied the first prong of the three-prong test required by New Mexico's long-arm statute.

## 2.     Cause of Action Arising from the Act.

Section 38-1-16(C) provides:  "Only causes of action arising from the acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section."  Obviously, this prong is also satisfied as Plaintiffs' cause of action is founded on the injury resulting from Defendants' alleged negligent acts.

## 3.     Minimum Contacts.

Despite satisfaction of the conditions of the long-arm statute, personal jurisdiction must fail as a matter of constitutional due process if a defendant does not have enough contacts with the forum state so as "not to offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  For the reasons discussed below, the Court finds that Defendant Richardson lacks sufficient minimum contacts with the State of New Mexico to be subject to the personal jurisdiction of New Mexico courts.

### a)     Sufficient Minimum Contacts.

The purpose of the 'minimum contacts' inquiry is at least twofold.  First, it protects the defendant from having to defend a lawsuit where it has no meaningful contact and where the substantive and procedural laws may be quite different from those with which the litigant is familiar.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979)).  In addition, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."  *Id.* at 1090.  "Although this protection operates to restrict state power, it 'must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause' rather than as a function 'of federalism concerns.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.13 (1985) (quoting *Insurance Corp. of Ireland*

*v. Campagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)). "[T]he Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will or will not render them liable to suit.'" *Id.* at 471 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). What constitutes minimum contacts varies with the "quality and the nature of defendant"s activity." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Meaningful contacts" can be defined as contacts by a defendant showing it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Id.*

### 1)    *Specific vs. General Jurisdiction.*

The "minimum contacts" standard may be met in either of two ways. First, a court may assert "specific jurisdiction" over a non-resident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum and the cause of action 'arises out of or relates to' those activities." *OMI Holdings*, 149 F.3d at 1090-91 (quoting *Burger King*, 471 U.S. at 472). The fact that the injury occurred in New Mexico, although sufficient to establish that the tort was committed in New Mexico, is not considered purposeful direction of the defendant's activities. *See Roberts*, 100 N.M. at 366-67 (defendant sold defective aircraft fuel in Nevada causing plane to crash in New Mexico; as defendant had no contacts with New Mexico, personal jurisdiction was not valid). Second, where the cause of action does not arise out of or relate to the defendant's forum activities, a court may exercise "general personal jurisdiction" over the defendant if it has general business contacts in the forum state. *OMI Holdings,* 149 F.3d at 1091 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)). However, in a general jurisdiction situation, as the cause of action is not related to the contacts, courts impose a higher minimum contacts standard, requiring a plaintiff to demonstrate a defendant's "continuous and systematic

general business contacts." *Id.* (quoting *Helicopteros*, 466 U.S. at 567). The practice of using the inquiries of "minimum contacts" and "traditional notions of fair play and substantial justice" to evaluate general jurisdiction, as well as specific jurisdiction, is followed by the Tenth Circuit. *Kuenzle*, 102 F.3d at 455 n.2.[*]

In the instant case, Plaintiffs do not assert that Richardson did business in New Mexico out of which this cause of action arose. Nor would the facts as given support such a claim. Plaintiffs went to Defendant Richardson's retail site in California, received demonstrations there, completed the purchase contract there, and then took delivery in Arizona. Plaintiffs allege that their intention was to use the trailer in New Mexico and that Richardson's employees knew of this intention. However, no case law establishes knowledge of a plaintiff's intention as a meaningful contact or purposeful direction of a defendant's activities. A plaintiff's intention to use a product in another locale, even if defendant knew of that intention, is unrelated to the defendant's actual activities in the forum state on which jurisdiction jurisprudence is predicated. In addition, if maintenance by Richardson of a web site could be considered a contact with New Mexico, Plaintiffs do not allege, nor do the facts show, that Plaintiffs ever accessed the web site prior to purchasing the trailer. Thus,

---

[*] Plaintiffs argue that in *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984), "the Supreme Court rejected the artificial distinction upon which defendants rely" pertaining to specific and general jurisdiction, combining related and unrelated contacts with the forum state together. (Resp. at 18.) Plaintiff misreads the case. The Court, without calling one 'specific' and the other 'general' jurisdiction, simply states that it has never solely required contacts giving rise to the cause of action, but also has allowed continuous and systematic general business contacts that did not give rise to the action to subject a defendant to jurisdiction. *Keeton*, 470 U.S. at 770. *Keeton* itself was a specific jurisdiction case as the harm (defamation) arose out of the content of the magazines that Hustler sold in the forum state, and thus extremely limited contacts were enough to subject defendant to personal jurisdiction there. Since *Keeton*, some courts have limited the use of the phrase "minimum contacts" to specific jurisdiction inquiry. *Kuenzle*, 102 F.2d at 455 n.2. However, since *Helicopteros*, many courts, including the Tenth Circuit, have used "minimum contacts" to signify the broader due process inquiry, rather than just an analysis of the sufficiency of specific jurisdiction. *Id.* Nevertheless, the courts still draw a distinction between the two types of contacts and between specific and general jurisdiction.

that contact, if the web site can be considered a contact, did not give rise to the action. Furthermore, although the injury occurred in New Mexico, the injury, by itself, does not constitute a meaningful contact, as all the activities of the alleged tort occurred elsewhere. Therefore, the minimum contacts standard applicable to this case is that of general jurisdiction.

### 2) *General Jurisdiction.*

To be sufficient, the minimum contacts inquiry in a general jurisdiction situation must rise to a level of "continuous and systematic general business contacts" in the forum state, a more stringent minimum contacts test than that for specific jurisdiction. *Helicopteros*, 466 U.S. at 416. In addition, foreseeability of causing injury in another state is not a "'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474; *see also Roberts*, 100 N.M. at 367. The foreseeability that is crucial to the due process analysis is that defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. Thus,

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 474-75 (citing *Hanson*, 357 U.S. at 253). Therefore, the presence of a product in a forum state, as a result of a plaintiff's unilateral activity, is also insufficient to constitute minimum contacts, despite a defendant's prior knowledge of a plaintiff's intended action.

The "'purposeful availment' requirement ensures that defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person." *Id.* at 475 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from the actions by the defendant himself that create

a 'substantial connection' with the forum State." *Id.* "Thus where the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475-76.

In the instant case, Plaintiffs allege that Richardson "does business with New Mexico residents and sells vehicles that will be utilized nationwide," (Compl. ¶ 5), and "knew the Garcias were from New Mexico . . . and . . . that the Garcias would drive the trailer back to their home in New Mexico for use in the state," (*id.* ¶ 8). However, Plaintiffs visited Richardson in Temecula, California, where the entire purchase transaction and all alleged acts of negligence took place, except delivery. (*Id.* ¶¶ 14-17, 20-31, 34-38, 41-42.) Delivery occurred across the state border in Arizona. (*Id.* ¶¶ 43-55.) In addition, Plaintiffs assert that Richardson maintains an interactive web site on the internet. (Resp. at 1.) Plaintiffs argue that Richardson has established sufficient minimum contacts by maintaining an "active web site that solicits business from New Mexicans and invites New Mexicans to communicate with Richardson RV Center via electronic mail, selling the recreational vehicle to plaintiffs for use in New Mexico, driving the recreational vehicle to the Arizona state line for the plaintiffs, and sending Plaintiffs a letter in New Mexico. (*Id.* at 12.) Plaintiffs also allege that Richardson intended to reject California jurisdiction for purposes of trailer sales, as it "goes out of its way" to attract out-of-state customers by towing trailers across the state line for delivery to such customers. (*Id.* at 17.)

Richardson responds by stating that Plaintiffs unilaterally visited Richardson while visiting relatives in southern California; there is no indication that Plaintiffs utilized the web site in any way;

Plaintiffs did not call Richardson on the toll-free phone line; the purpose of the web site is to attract California customers; and, other than the web site, Richardson only advertises in California. (Reply at 6.) Additionally, out of Richardson's 3,067 sales over three years, five, or 0.16%, were to New Mexico residents, and that out of approximately 11,000 total toll-free calls during the same period, nine, or 0.126%, came from New Mexico. (Reply at 6; Richardson Aff. at 2.) All sales to New Mexico residents occurred in California. (Richardson Aff. at 2.)

Plaintiffs attempt to utilize Richardson's knowledge that the Garcias would use the trailer in New Mexico, making it foreseeable that a tort could occur in New Mexico, to constitute a meaningful contact. *Burger King* specifically rejects that kind of foreseeability as part of the inquiry to establish minimum contacts. 471 U.S. at 474. What is significant, however, is Richardson's own conduct with respect to New Mexico. Thus, foreseeability of the kind had by the Richardson Defendants is not relevant to this inquiry.

Richardson's sales to other New Mexicans who were in California and phone calls from New Mexicans cannot be said to rise to a level of "continuous and systematic general business contacts" in New Mexico, as required by *Helicopteros*. 466 U.S. at 416 (contacts were not continuous and systematic general business contacts when defendant sent executive officer to forum state to negotiate contract, accepted checks drawn on forum state bank, purchased equipment and training services from plaintiff located in forum state, and sent personnel to forum state for training). These sales in California and phone calls into California amount to unilateral activity of third parties. Even if the sales and phone calls are not considered unilateral activity, such insignificant numbers must be considered random, fortuitous, or attenuated contacts. *See, e.g., id.* at 408. This Court does not characterize that level of activity to be of a "quality and nature" such as would indicate purposeful

availment of the benefits and protections of New Mexico laws.  *See Burger King*, 471 U.S. at 474-75; *Hanson*, 357 U.S. at 253.

Plaintiffs also contend that, by its practice of towing the trailers across the state line, thus avoiding the need to collect California sales tax from its customers, Richardson intended to reject California jurisdiction.  Plaintiffs reason that Richardson therefore anticipated falling within an out-of-state judicial jurisdiction.  (Resp. at 17-18.)  However, even favoring Plaintiffs' conclusory interpretation of the facts, that cannot affirmatively confer jurisdiction on New Mexico when the delivery took place in Arizona.  Personal jurisdiction in any particular state is not determined by lack of jurisdiction elsewhere.  If delivery in Arizona created a meaningful contact with another state, that state would be Arizona.

Therefore, aside from the existence of the web site, the facts as alleged by Plaintiffs do not indicate a quality and nature of activity by Richardson sufficient to create a substantial connection with New Mexico and invoke its general jurisdiction.  *See, e.g., Worldwide Volkswagen*, 444 U.S. 286 (New York car retailer not subject to *in personam* jurisdiction in Oklahoma when it sold car in New York and had no contacts with Oklahoma; unilateral action of plaintiff resulted in car's presence in Oklahoma where tort accrued).  Indeed, in the case law, these contacts are not even considered meaningful contacts.  *See, e.g., Burger King*, 471 U.S. at 474.

### 3)      *The Web Site*

Thus, the pertinent question in this inquiry is whether Richardson's maintenance of its web site is, by itself, enough to constitute continuous and systematic general business contacts and purposeful availment of the benefits and protections of New Mexico's laws.  This Court finds that it is not.

This issue, one of first impression in the District of New Mexico, has been addressed in other federal districts and the Sixth and Ninth Circuits. A review of a significant portion of the case law reveals that courts generally require contacts beyond maintenance of a web site to find jurisdiction. Most cases involve actions arising from trademark infringement on a web site and thus address specific jurisdiction. Three of these courts held that there was no personal jurisdiction over the defendant, even though it maintained a web site on which the trademark was infringed, finding that the web site was insufficient to establish purposeful availment of the laws of the forum state when the defendant had no other contacts. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997); *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996); *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997). Other cases analyzing specific jurisdiction, including some arising from internet activities other than web sites, predominantly involved additional non-web site related contacts which would by themselves establish sufficient minimum contacts. *See, e.g., CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) (subscriber in contract case subjected to personal jurisdiction because he subscribed to service, entered into separate agreement with service, advertised his software through the service, and repeatedly sent his software to the service in forum state); *Purco v. Towers*, 38 F. Supp. 2d 1320 (D. Utah 1999) (defendant used name of forum state competitor, solicited business from forum state resident, and attempted to extort money from forum state competitor); *Heroes v. Heros Found.*, 958 F. Supp. 1 (D.D.C. 1996) (defendant solicited donations in local newspaper); *Maritz v. Cybergold*, 947 F. Supp. 1328 (E.D. Mo. 1996) (defendant developed mailing list of users who contacted site and transmitted information into forum state approximately 131 times); *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34 (D. Mass. 1997) (defendant had major client located in forum, which client was named in offending web advertisement, and took no steps to exclude contacts with

forum state); *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) (defendant sold passwords for internet service to approximately 3,000 subscribers in forum state and entered into seven contracts with internet access providers to furnish services to their customers in forum state). Although two of these cases, *Heroes* and *Maritz*, imply that the web site alone should be sufficient to establish minimum contacts under specific jurisdiction, only one case actually has found personal jurisdiction under such a scenario, *Inset Sys. v. Instruction Set*, 937 F. Supp. 161 (D. Conn. 1996). Most courts have declined to follow the reasoning proffered by the *Inset* court. *See, e.g., Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 916 (1999); *Hasbro*, 994 F. Supp. at 46; *Hearst*, 1997 WL 97097 at *20.

Regardless, as discussed above, this matter involves not specific, but general jurisdiction. In representative general jurisdiction cases, in which the defendant maintained a passive web site, all of the courts have held that they did not have personal jurisdiction. *See SF Hotel Co. v. Energy Invs.*, 985 F. Supp. 1032 (D. Kan. 1997) (maintained passive web site providing general information about hotel, Kansas resident had stayed at hotel, and visitor's bureau guides had been sent to Kansas residents in response to their requests); *McDonough v. Fallon McElligott, Inc.*, No. CIV. 95-4037, 1996 WL 753991 (S.D. Cal.) (maintained passive web site, hired independent contractors in forum state, and ran ads in national publications); *Patriot Sys., Inc. v. C-Cubed*, 21 F. Supp. 2d 1318 (D. Utah 1998) (defendant had passive web site with telephone number); *Weber v. Jolly Hotels*, 977 F. Supp. 327 (D.N.J. 1997) (passive web site); *Smith v. Hobby Lobby Stores, Inc.*, 968 F. Supp. 1356 (W.D. Ark. 1997) (advertised in trade magazine published on the web).

The issue thus becomes where Richardson's web site falls in the spectrum of different types and uses of web sites. In *Zippo*, the court describes a sliding scale based on the nature and quality of commercial activity that the entity conducts over the internet. 952 F. Supp. at 1124. At one

extreme, personal jurisdiction is established when a defendant clearly does business over the internet, such as entering into contracts which require the knowing and repeated transmission of computer files over the internet. *Id.* At the other extreme, exercising personal jurisdiction is *not* appropriate when the internet use involves a passive web site that does little more than make information available to those who are interested in it. *Id.* Under these circumstances, a defendant has simply posted information on an internet web site which is accessible to users in foreign jurisdictions. *Id.* The middle category encompasses interactive web sites where a user can exchange information with the host computer. *Id.* Whether the exercise of jurisdiction is appropriate depends upon the level of interactivity and the commercial nature of the exchange of information that occurs on the web site. *Id.*

In the case at bar, Richardson's interactive web site is informational, showing products and prices, and provides three methods of obtaining additional information: an "800" telephone number, a form to fill out to obtain general information which is submitted via the internet, and an e-mail hyperlink (a "doorway" to an e-mail program to type out a request, which is also transmitted via the internet). Thus, an internet user can exchange information with the host computer. However, internet users cannot order, engage in sales transactions, or pay for products over the internet. The interactivity appears to be much closer to the passive end of the sliding scale, similar to a passive site which provides a phone number. In such a passive site, a user engages in a separate act of telephoning the retailer to obtain additional information. Richardson's web site creates additional ease of requesting information by incorporating the information gathering mechanism into the web site. This can be favorably compared to accessing a yellow pages found in any library and telephoning a retailer, which is insufficient to create minimum contacts. *See, e.g., Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). As observed by the *Bensusan* court, "[t]he mere

fact that a person can gain information on [a] . . . product is not the equivalent of a [business] advertising, promoting, selling or otherwise making an effort to target its product in [the forum state]." 937 F. Supp. at 299.

A web site also may be compared to an advertisement in a national magazine. The Tenth Circuit has held that the mere placement of an advertisement in a nationally distributed newspaper or magazine does not rise to the level of purposeful contact with a forum required by the due process clause. *Federated Rural Elec. Ins. Co. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991). Richardson's web site, however, involves even less intentional contact than an advertisement in a national magazine. In the case of a magazine, the advertisement is "pushed at" a consumer who is already reading the substantive publication. In the case of a web site, the site is hanging in "cyberspace." It is the internet user who must conduct a search, which results in a list of sites. The user then chooses various of the sites at which to look. If the internet user has accessed a site, it is as the result of his or her unilateral interest and activity.

Plaintiffs rely on *Inset Sys.* and *Heroes* to argue that on the internet an advertisement is available "continuously." Those cases base their results on a "continuity" factor ("continuous" or "persistent contact"), *Inset Sys.*, 937 F. Supp. at 165; *Heroes*, 958 F. Supp. at 4, but without considering the "systematic" factor required by the "continuous and systematic general business contacts" definition of general jurisdiction, *Helicopteros*, 466 U.S. at 416. However, a defendant's ability to expose itself to internet users could not be considered to be "systematic" as it relies on the user to look for it according to his or her own whim. As the *Hasbro* and *Bensusan* courts point out, this continuity concept is equivalent to Justice O'Connor's analysis of placing a product into the "stream of commerce." *Hasbro*, 994 F. Supp at 42; *Bensusan*, 937 F. Supp. at 301 (both citing

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion) ("placement of a product into the stream of commerce, without more," fails the purposeful availment requirement for minimum contacts)). By establishing a web site, which is located either in defendant's home state or "cyberspace," *Bensusan*, 937 F. Supp. at 299, it is in the "stream of commerce" and will be pulled up on a computer in the forum state only by coincidence, as a result of "random," "fortuitous," or "attenuated" contacts, or through the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475.

If the law were to establish that in posting an advertisement on the internet one subjects oneself to personal jurisdiction anywhere the internet is accessible, which position was taken by the courts in *Inset Sys.*, *Maritz*, and *Heroes*, the result would be to strip all due process protection pertaining to personal jurisdiction from that entity, annihilating the protection afforded a defendant by the minimum contacts law. *McDonough*, 1996 WL 753991 at *3. In addition, such precedent would vastly degrade the standard for minimum contacts, especially that pertaining to general jurisdiction, which is subject to the more stringent test. This Court finds that such an action would violate the Due Process Clause and thus would be unconstitutional.

Plaintiffs' arguments — that Richardson "continuously reaches out to New Mexico" by maintaining an interactive web site, allowing potential customers from New Mexico to communicate with Richardson at no cost to the customer via internet or toll-free calls, and that Richardson's intention to reach out to New Mexico on the internet is shown by Richardson's offer to tow the trailer to the Arizona border, avoiding requisite California taxes — fall short of "meaningful contacts" and cannot overcome the constitutional requirements. Even if a toll-free number established that a defendant was targeting the whole nation, it still lacks purposeful availment of New Mexico itself. As for delivery in Arizona, a policy argument might be made that a company's

avoidance of the obligations of its own state should influence the perception of minimum contacts in the forum state. However, as the delivery occurred in Arizona, it is a stretch to then say Richardson is reaching out to New Mexico. These activities do not constitute purposeful availment by Richardson of the benefits and protections of New Mexico law and fall short of the "substantial connection" and "continuous and systematic" standards articulated in *Burger King* and *Helicopteros* and their progeny.

### b) *Notions of Fair Play and Substantial Justice.*

The Court must also determine whether jurisdiction would offend "notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316. In making such a determination, "[c]ourts 'in appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 44 U.S. at 292). These factors may serve to establish the reasonableness of jurisdiction based upon a lesser showing of minimum contacts or may defeat jurisdiction even where defendant has purposefully engaged in forum activities. *Id.* at 477-78.

In the instant case, Plaintiffs have proffered facts intended to fulfill the "fair play and substantial justice" factors. However, regardless of the merit of those facts, which is not addressed here, the general wording of the case law presumes there is at least some showing of purposeful availment which the factors would enhance. *See, e.g., id.* at 477-78. The Court has found no purposeful availment on the part of Defendant Richardson and, thus, there is no basis to enhance.

Exercise of jurisdiction over Defendant Richardson thus would offend "notions of fair play and substantial justice."

Therefore, for the foregoing reasons, this Court finds that, although Plaintiffs made a *prima facie* showing that Defendant Richardson's alleged tort fulfilled the requirements of New Mexico's long-arm statute as stated at Section 38-1-16(A) and (C), they have failed to show that Richardson had sufficient minimum contacts with New Mexico so that personal jurisdiction would not offend traditional notions of fair play and substantial justice.

E.  **Appropriateness of Personal Jurisdiction over Richardson's RV Centers, Inc.'s Employees Under New Mexico Law.**

"[I]n determining whether personal jurisdiction is appropriate, an employee's contacts with a jurisdiction 'are not to be judged according to their employer's activities there.'" *National Petroleum Mktg., Inc. v. Phoenix Fuel Co., Inc.*, 902 F. Supp. 1459 (D. Utah 1995) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Id.*  Instead, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.*; *see also Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994) (although employer was subjected to personal jurisdiction in forum state, employee supervisors lacked their own sufficient minimum contacts and were not subject to personal jurisdiction in the forum state).

Thus, Richardson's contacts cannot be ascribed to Defendants Butts and Hauser.  They must have their own sufficient contacts to be subject to personal jurisdiction in New Mexico.  In the instant case, Plaintiffs do not allege that Butts and Hauser have any contacts other than knowledge of Plaintiffs' intent to use the trailer in New Mexico.  As discussed above, this is not a meaningful contact.  In addition, it is not alleged that Butts and Hauser had anything to do with Richardson's web site; thus, the web site cannot be considered a contact of Butts and Hauser, even if the web site

21

were a sufficient contact. Therefore, this Court finds that Butts and Hauser lack sufficient minimum contacts to be subject to jurisdiction in New Mexico.

**F.      Whether It Is Premature to Grant the Motion to Dismiss.**

This Court finds it is not premature to grant Defendants' Motion to Dismiss, despite Plaintiffs' argument to the contrary.   Discovery in this matter has been stayed by the Magistrate Judge pending the Court's ruling on Defendants' Motion. (*See* Order of July 8, 1999.)  Plaintiffs contend that they should be provided with the opportunity to discover additional facts related to personal jurisdiction over Defendants, including whether Richardson communicates extensively with potential customers in New Mexico via the Internet, e-mail, and its toll-free number; whether Richardson has other commercial contacts with New Mexico; and whether Richardson sells a substantial number of recreational vehicles to customers from New Mexico.  (Resp. at 23.)

Contrary to Plaintiffs' assertion that there is a strong factual foundation for New Mexico jurisdiction, the facts set out in the record, as discussed *supra*, do not make a *prima facie* showing of meaningful contacts with New Mexico.   Additionally, Defendant Richardson has shown by affidavit that the number and quality of its contacts with New Mexico customers and potential customers are insufficient to meet the minimum contacts tests.  (*See* Richardson Aff. ¶¶ 4, 6, 7, 8.) Furthermore, it is unlikely that Richardson, a retail enterprise local to southern California, could have sufficient other relevant commercial contacts with New Mexico, given that mere purchases from a forum state, even if occurring at regular intervals, without more, is not enough to support personal jurisdiction. *See Helicopteros*, 466 U.S.417-18 (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518 (1923)).

Thus, there is not a reasonable basis to believe that additional facts relevant to jurisdiction will be developed through discovery in this matter.  *See Budde v. Ling-Temco-Vought*, 511 F.2d

1033, 1035 (10th Cir. 1975); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).

Therefore, the Court will grant the Richardson Defendants' Motion to Dismiss.


**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal

Jurisdiction (Docket No. 16), filed May 21, 1999, is **GRANTED**.


_____

**UNITED STATES DISTRICT JUDGE**